We're happy to hear argument in our last case, number 144444, United States v. Hardison. May it please the court. Mr. Hardison is asking that the court vacate the 60-month, i.e., five-year sentence that the district court imposed when it revoked his supervised release. And we're asking the court to do so because there is absolutely no indication in this record that the court ever considered the guidelines and the advisory range from the guidelines. Even by the enormous discretion and latitude that the cases give to district courts in supervised release context, it is still clear that a district court must consider the guidelines and must indicate to this court that it has considered the factors so that this court has some basis to decide whether or not the sentence is or is not reasonable. And that simply did not happen here. The court, you know, quite candidly, understandably upset at Mr. Hardison. From the moment the court started speaking, it was apparent that a five-year maximum sentence was going to be imposed. Well, he felt like he'd been double-crossed. He just turned the guy back out a little bit before that, trusted him, he said. That's correct. And he breached the trust. That's correct. And again, the cases talk about breach of trust, and so does the policy statement talks about a breach of trust, but the court is also required to consider the guideline range and did not do that here. Is this a plain error case again? I was about to address that. I don't believe it is. And this would be my argument. And, you know, Judge Motsch, you wrote Lynn. You asked for leniency. Yes, she asked. She said, you know, the court sent her over. Does that preserve something, asking for leniency? I think it's asking for a different sentence because the court made very clear, you know, he said, Mr. Hardison deserves a maximum sentence. This is a maximum sentence case. And when defense counsel kept talking, the court said, well, why are you talking? You don't have your credibility. You know, you're putting your credibility on the line here. And she says, I'm just trying to say some things in mitigation. So I think that is a request to, you know, please, Judge, don't impose a maximum in this case. So I would think that would be enough to preserve this issue. And so I would say on that basis that the court should find that there is error, I think. And even under a plain error standard, I think we could meet that as well. What evidence is there affecting rights? Well, I think the purpose... I think it's really like, it could not be clearer the district judge was going to impose a sentence, no matter what he reviewed. And he could, he had legal authority to. Yes, yes, absolutely. Well, you know, this case should not stand for a proposition that the court, you know, if considers the breach so egregious that it doesn't consider it. You know, it looks at it and says, well, this is a maximum case. And I'm not going to, I don't care what the guidelines say. I don't care what defense counsel says. I don't care what the defendant says. That is not the procedure. The guidelines, if they do nothing else in a supervised release context, at least give the court some basis for judging how serious the offense is. Because it gives a range. And in this case, it gave a range that was less than 60 months. It was more than a year less than 60 months at the top of the range. So one would hope that would at least have the district court think for a minute. If it still decides then, it says, I don't care what the guidelines, the guidelines recommend 46 months here is the top. I still think this is so bad that I'm going to impose a maximum. And that's okay. But we don't have any indication here that the court even looked at what the recommendation was. Well, in revocation cases, we don't require as much as we did Lynn, which you talked about a little bit. It wasn't a revocation case. That's correct. Lynn was not a revocation case. But the Molden case was. And Molden still talks about, in fact, Molden talked, in talking about the wide latitude that the judges have in sentencing revocations, still talked about, said, of course, the district court still must consider the guidelines. So that's taken as a given that that factor has to be considered. And it just simply was not here. And so we think on that basis alone, it should go back that this court should not say that a court doesn't have to consider the guidelines in a supervised release context. I don't think any case has gone that far. And they're required to consider the guidelines for a reason. I think we understand your argument. I think you do. Okay, thank you very much. Thank you. Mr. Rubin. Thank you, Your Honor, and may it please the Court. Phil Rubin on behalf of the United States. I certainly acknowledge that the district court's oversight and not specifically referencing the policy statement range is a problem in this case. Is it error? I don't think so. And that's something, Your Honor, that I've grappled with in preparing for this oral argument. And the reason I don't think it rises to the level of plainly unreasonable, which is the standard even if we're not on plain error, which I'll address, is the compelling facts in this case combined with the way the district court's reasoning very closely aligns with Chapter 7 of the policy statements. And it's true. There's no question we acknowledge the district court didn't cite Chapter 7. But Chapter 7 as a whole is more than just the table. Chapter 7 includes the entire philosophy of sentencing revocation offenses. And what it says is the primary focus should be to punish the breach of trust. And that, Judge King, you mentioned double-crossing and then the court talked about breach of trust. That was the primary focus of the district court's analysis. Then it says secondarily... When he talked about trust, he spelled it out. T-R-U-S-T. He did it several times, Your Honor. He cited to this breach of trust being so outrageous. And it was. I'm not saying that they want leniency to take care of it, to make it something else besides plain error. That certainly means less than the five years leniency. As I understand it, Your Honor... Be lenient. I don't think that's enough. Respectfully, I think I have to disagree with my colleague on that. I think as I understand the standard, normally you need to ask for a specific sentence or at least object. And there's good reasons to hold defendants to that in these revocation cases. But the claim they're making is that you should have looked at these revocation guidelines. Is that what they're called? What are they called? They're called policy statements. Okay. But saying I want leniency, it seems to me, is a little different than saying look at the policy statements. I think... So, yes, it preserved... He objected to the sentence. But we don't know on what basis. And really, to follow on that, Judge Motz, what we're really talking about now is something very specific and that was not at all objected to. And an objection here... The purpose of an objection is to advise the district court of what you think the problem is. And an objection here could have really made a difference. The Davis case. This court... So what should the objection have been? Not give me leniency, but... I think either objecting or requesting a specific sentence or saying, Your Honor, this is above the policy statement range and we don't think that you should do that. Does the government have an obligation to help out? I think the government should help out, Judge King. I wouldn't go so far as to say the government has an obligation because usually the party that is aggrieved is the one that has the burden on paying a plain error review. But you all have an obligation to get the record straight so you won't have to come up here and argue... even argue a plain error. And I wish... Why don't we just try to get it right so we don't have to do it twice? I mean, we seem to get a lot of plain error cases from you all. We really get a lot of them. This morning, two out of... Two out of the four cases. And, Your Honor, I think that would be the proper practice, and that's something that we've already talked about in preparing for this case is something to advise our prosecutors. All of your officers of the court must try to get it right. I mean, I don't know... That's kind of an easy answer, it seems to me, for you all. I absolutely... The only thing I wouldn't go so far as to say that it is an obligation, because it's generally the party aggrieved that has the obligation. It is generally the party aggrieved, but the criminal case is different. The government has a special obligation in the criminal case to get things done right. You recognize that. Of course, absolutely. And we've said it, the Supreme Court's said it, every court in the country's said it. And no question the government should be doing that, and not just in these cases, but also in regular sentencing cases. I know a lot of those come up on insufficient explanation. But nonetheless, when a defendant doesn't ask for a lower sentence, even though the government absolutely should say, Your Honor, you haven't explained this thoroughly enough, the standard is still plain error if a defendant doesn't meet the test in Lynn. Actually, the same is true if the government appeals the sentence and the government didn't object or ask for something specific. But I do think whether you look at this under the plain error test, or whether you look at this under the normal plainly unreasonable... If you look at it under a plain error test, what's wrong do you think stops the government's position? We think it's not error. Under any test. So it stops at the first problem. That's right. If it's error, it goes to the second. Who wins on the plain part? I think, and it's difficult to say, but if the court decides it's error because it's basically per se error not to have cited the policy statement range, I suspect you would probably say that was plain. Because you would be saying that was contrary to law. Then what do you do with the third prong? Then I think that's where it ends, in that sense, Your Honor. So you think you'd win on the third prong anyway and it wouldn't go back? Absolutely. I think we would win on the third prong. Because he said it was clear that he was going to give him... That's right, Your Honor. I agree completely with Judge Motz's statement that it could not be clearer that this district court intended to give the maximum. And I think in doing so, and the reason we think it's not error is that the court was implicitly rejecting any policy statement range. But even if you reach the substantial error prong, the court's statements, and this is what he said. He's going back and forth with defense counsel and he said he had a serious sentence that he did and now he's been back twice on revocation. And I mean, I know you're doing your job, but how can you have any credibility about being lenient with him? He should get the maximum punishment. And then at the end of the hearing, the judge said he was going to issue a written order, which I think the court is aware is pretty unusual in a revocation hearing. He was going to what? Issue a written order explaining the sentence. It's a pretty unusual step. And what he said is he wanted to ensure that this court will, quote, have an opportunity to review why he got the maximum punishment. The court then goes on to issue a two-page order explaining its reasonings and talking about exactly the two things that Chapter 7 policy statements call for courts to look at, which is primarily sanctioning the breach of trust, which here was egregious. The district court had given him a second chance at a second chance and four months later he's caught on extremely serious criminal conduct. And then secondarily, to punish the extent of the conduct. And this conduct was serious in a number of significant ways, all of which were identified by the district court. You all could have just indicted him again, I guess. He could have been. Then he got a whole bunch more time. As I understand it, at the time there were pending charges in state court on the criminal conduct, I can't speak to, I don't know what the status of those is, but he was charged in North Carolina courts for those offenses. And they're serious offenses. This was a defendant who went away for 208 months for being the leader of a drug, he was really a drug distributor, with guns, and then during his supervised release he's caught being a drug distributor with guns. And this was not some singular one-time failing. This was a defendant who the police had started investigating narcotics activity, they didn't even know about him. They discovered he was the guy distributing to all of their targets. And it turns out he was a well-known drug dealer in the area after having gone away. That serious criminal conduct, combined with twice breaching supervised release and breaching the court's trust in a significant way, both of which are what the Chapter 7 policy statements call for, the district court said, look, I'm giving you the maximum. You deserve the maximum punishment. So, first we think that that is consideration of the Chapter 7 policy statements as a whole. And that's why we think that on this particular record in this case, the court's omission in not citing to the policy statement range, or any of the parties, in the Davis case, the court didn't cite to it, it was the defense counsel who mentioned it, and that was enough to infer that the court was aware of it. The fact that no party did that, we don't think that that renders the entire sentence. Well, he not only didn't cite those guidelines, he cites 3553. He does cite 3553, Your Honor. Yes, and he cites two of the factors. Do I take your question to say that that indicates he didn't consider Chapter 7? Well, you seem to think 3553 applied, not the guidelines, right? I would disagree. I acknowledge he did not cite Chapter 7, but Chapter 7... And then he did cite 3553. He did, and I think courts are more used to citing 3553 by the numbers. So it looks to me like he wasn't thinking about these so much being the reputation, and having separate consideration. I recognize what the court is saying. I can't go that far to agree with that, because if you read all of Chapter 7, and it's really easy to focus on the table, the policy statement range. It's really easy to Chapter 7 is about nine pages long that isn't the table. And what it talks about is the philosophy of how to sentence revocation. And it says, first, look at breach of trust, and second, look at the severity of the criminal conduct. And if you look then at the district court's reasoning, it follows that to the letter. He looked at both of those. In that order, and in that order of preference. So I think it's fair to say he did. So you think the court just never asked to look at the actual range? I don't think so. I don't think that, Your Honor. I think that in some cases you might say that the failure to cite the range on the facts of that case shows the court didn't properly consider Chapter 7. I think on the facts of this case. You think he should cite? I absolutely think he should. And we acknowledge that's... I misunderstood your answer to Judge Thacker. And I apologize if I misspoke. I think in some cases you may find that the failure to cite to the policy statement range is enough that you're going to say that's error. I think in this case when you have such a comprehensive record, when you have such egregious conduct, both in the breach of trust and the severity, and I would like to touch on that very quickly, is the severity of this conduct. The policy statement table assumes that you had one violation. If you have multiple ones, it says just take the worst one. Well, this defendant had what I believe would be four Grade A violations. And the policy statement range would punish that as if he had done only one. He had breached the supervised release twice, and the policy statement range would bear absolutely no relationship to that. And there's reasons. It's a policy statement. The guidelines for criminal sentencing are far more exacting. A policy statement is meant to be broader, and that's what we have here. In all, he received 14 months above the top end of the range in light of all of those things. The District Court, I think, could not have been clearer that it believed the appropriate sentence, the one that was sufficient but not greater than necessary, was the maximum sentence. And therefore, if you remand this, I think there's every reason to believe we'll get exactly the same sentence. And that is the test. Whether we're under plain error or harmless error, the court would be looking at whether you expect that the sentence, whether you have fair assurance that the sentence would be the same on remand. We think you do have that fair assurance. And therefore, we think whether you consider it error, or whether you reach the not error, or whether you reach the substantial rights prong, that you should affirm that sentence. I'll take any other questions. If not, I'll yield back. You weren't present at the sentencing, correct? I was not, Your Honor. Were you in the office then? I did work at the office, yes, Your Honor. Oh, no, actually, no, I let me just verify the date of the sentencing. I did not I did not work at the office. I started two weeks later. Thank you very much. Thank you. Let me make two very brief points. First, under the revocation guidelines, and under 3583, the nature of the offense is not one of the considerations. So, it is not correct that a court can come in and simply look at the violation and say under 3553A, I'm punishing this conduct. As I read it, the nature of the offense is not one of the factors in a supervised release case. It is in a regular criminal case. He said the severity of the conduct. I'm sorry? He said the severity of the conduct. I don't see how that's different from the nature of the offense. That's what he called it. That's what he called it. That's what the government called it. Yes, yes. You think you're wrong on that? I think it's not a consideration, yes. And certainly not to the extent that you can base the entire sentence on that. Now, in fairness to the court here, it did also mention the breach of trust, which is very relevant. The only other thing I wanted to point out was if you look at the written order, it does not mention the guidelines either. That's what I just said to him. Yes. So, we have no mention by the district court at all of a consideration of the guideline range. And I would ask the court therefore not to sanction, not to affirm its sentence where there's no indication that the guidelines are looked at. The best you get here is a remand for resent. That's correct, Your Honor. And do we really think the district court will do anything else? I mean, it's kind of an exercise in futility. Right? Well, we're getting into Savio Matute territory, I guess, with that. I'm sorry, I didn't understand what you were saying. I'm sorry, I think we're getting into sort of the harmless error standard. Right, we are. Savio Matute, yes. You know, again, none of the cases where the assumed harmless error I'm forgetting how to say that exactly, but the test Judge Shedd announced in Savio Matute. This court has not had a case where there was a failure to consider the guidelines. So, I would ask the court to look at that. And ask you to reverse. Thank you. Thank you very much. We will ask our clerk to adjourn court and then we'll come down and greet the lawyers. This court stands adjourned until 2.30 this afternoon. God save the United States and this Honorable Court.
judges: Diana Gribbon Motz, Robert B. King, Stephanie D. Thacker